UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


CATLIN SPECIALTY INSURANCE CO.,

     Plaintiff,

v.                                CASE NO.  2:10-cv-607-UA-SPC

ORIT COHEN; VENETIAN INVEST-
MENTS, LLC; HAWKS LANDING OF
PUNTA GORDA, LLC; LEON AGAMI;
OSCAR BULLARD GENERAL
CONTRACTOR, LLC; and OSCAR
BULLARD,

     Defendants.

_____/


## ORDER

An insurer sues in the district court for a declaration that no obligation to

defend or to indemnify an insured property owner results from a state court, wrongful

death action against an insured on whose commercial premises the deceased fell to

his death.  The deceased visited the insured's premises because of a contract between

the insured and Alko Systems for the installation of security cameras.  The deceased

conducted his security camera business through Alko Systems, his corporation.

The insured's general liability policy from the insurer excludes from coverage

an injury to an independent contractor.  The insured claims that because the

deceased had failed to provide the agreed proof of insurance and, therefore, allegedly had failed to satisfy a condition precedent to the contract and because the deceased otherwise lacked permission to ascend to the roof, the deceased was an unauthorized trespasser and not yet an independent contractor (a business invitee). Also, the insured claims that the deceased was not an independent contractor because, before the contract between the insured and the deceased, the State of Florida had dissolved Alko Systems.

But the deceased had submitted a written offer for the work on the insured's premises, and the insured had accepted the offer and issued a check to the deceased for the first of two payments for the work. A contract existed. The agreed proof of insurance was not yet delinquent; a breach of the contract neither existed nor was even claimed. The contract between the insured and Alko Systems unmistakably creates the business relation of an owner and an independent contractor.

Although the corporation was administratively dissolved, the insured is estopped to deny the existence of the corporation with which the insured contracted. Even if the corporateness of the deceased's entity is denied, the effect is merely to substitute a sole proprietor for the corporation as the independent contractor without effect on the exclusion from coverage. In short, the insured tries to wriggle away from the consequence of the contract with the deceased – but to no avail; the insurer is entitled to a summary judgment.

## THE STATE COURT COMPLAINTS

The successive state court complaints (from the original complaint through the fourth amended complaint) by Orit Cohen, the personal representative and widow of David Cohen, allege that David Cohen as a "business invitee . . . went on the roof of the [defendant's] property to take measurements for the installation of a CCTV video system" and, because Venetian Investments "negligently maintained the roof and parapet walls by not having the parapet walls located at the edge of the roof at a safe height," Cohen "fell on the property and died."  The fourth amended complaint alleges a claim in Count I for negligence against Venetian Investments, LLC, as owner of the property; a claim in Count II for negligence against Hawks Landing of Punta Gorda, LLC, as owner of the property; a claim in Count III for negligence against Leon Agami, as the "principal" and manager of Venetian Investments, LLC; a claim in Count IV for negligence against Oscar Bullard General Contractors, LLC, as the general contractor hired "to perform construction to the roof and/or parapet walls on the roof" of the premises; and a claim in Count V for negligence against Oscar Bullard, also allegedly hired to "perform construction to the roof and/or parapet walls on the roof."

## THE COMPLAINTS IN DISTRICT COURT

Catlin Specialty Insurance Company's fourth amended complaint in the district court (another "fourth amended complaint" but not the same complaint as

Orit Cohen's "fourth amended complaint" in state court) alleges that Catlin issued "commercial general liability coverage" to Venetian Investments, LLC (but the policy clumsily describes the insured as "Venetian Investment, LLC, dba Marco Walk Hawks Landing of Punta Gorda, LLC"), which owns the pertinent premises, the Marco Walk shopping center at Marco Island, Florida.  The insurance policy's coverage excludes "bodily injury" to:

> An "employee", "temporary worker", "volunteer workers", independent contractor or subcontractor of any insured or employee of any independent contractor or subcontractor arising out of and in the course of:
>
> (a)     Employment by any insured; or
> (b)     Performing duties related to the conduct of any insured's business; or
> (c)     Arising out of the injured party's employment . . . .

Catlin's complaint in the district court denies any obligation to any defendant to defend the state court wrongful death action or to indemnify any loss, alleges that Catlin has assumed the defense in state court only under a reservation of rights, and alleges that the words "independent contractor or subcontractor of any insured or employee of any independent contractor or subcontractor" exclude the claim asserted in state court because, among other reasons, Cohen was an excluded "independent contractor."  Catlin's complaint seeks a declaratory judgment relieving Catlin from any demand by a defendant for either defense or indemnity, that is, Catlin seeks a declaration that the policy excludes coverage for Cohen's accidental death.

## THE MOTION FOR SUMMARY JUDGMENT

With admirable clarity, Catlin's motion for summary judgment states that the "basis for this motion is that the Catlin policy's independent-contractor exclusion eliminates coverage for the allegations of Mrs. Cohen's complaint because Mr. Cohen was an independent contractor performing work for the insured . . . when he died."  With similar clarity, Venetian Investments and Leon Agami agree that "[t]he issue in this case is whether . . . the decedent . . . was on the property as an independent contractor sufficient to trigger the independent contractor exclusion of the policy."

## DISCUSSION

The pertinent complaint alleges, as stated earlier, that in this fatal project Cohen entered the Marco Walk premises "as a business invitee" in connection with the installation of video cameras, for which Cohen, acting through Alko Systems, had contracted with Venetian Investments, through his acquaintance Agami.  Florida law initially directs an examination of the "four corners" of the most recent complaint to determine from the allegations whether the pertinent policy entitles an insured to defense and indemnity.  In this instance, acting prudently, the insurer examined the complaint and determined that no coverage exists but, nonetheless,

- 5 -

assumed defense under a reservation of rights and seeks relief by declaratory judgment in the district court.[1]

The record demonstrates that Cohen operated "Alko Systems," a small (essentially a one-man), incorporated business that installed security cameras. Cohen and Agami met in the course of their respective business activity in Miami-Dade County, Florida. During casual conversation, Cohen asked Agami about prospective security camera installation business, and Agami mentioned the Marco Walk shopping center in Marco Island, Florida. Marco Walk was owned by Venetian Investments and actively and exclusively managed by Agami.

In due course, Cohen submitted to Agami a written proposal to install security cameras at the Marco Island project. Agami initially rejected the proposal because of the price. Later, Cohen submitted to Agami a second written proposal, in which he proposed (rather than undertaking the entire project at once and payable in a lump sum) to undertake the project in phases and payable in portions. Attracted by the eased financial burden, Agami agreed to the revised proposal and issued to Cohen a check for the initial phase of the work – with the balance due on completion.

---

[1] An independent assessment confirms that the "four corners" of the complaint (and all the appurtenant facts) alert an insurer to no incident covered by the insured's policy. The complaint plainly and unmistakably alleges the accidental death of an excluded independent contractor. This is not an instance in which the insurer has knowledge of extrinsic facts that suggest coverage exists; this is a circumstance in which everything within the factual horizon confirms to the insurer that no coverage exists. This is an action in which the question of what facts or allegations are properly considered in deciding a coverage question is not troubling because the entire array of facts, properly understood, gravitates to a single conclusion: no coverage because Cohen (or Alko Systems) was an independent contractor.

Accordingly, Agami testified that, "My agreement with him is, I sign a contract with him and gave him a check for him.  I hired him to install camera in my property." (Agami at 65)  Agami also told Cohen to provide proof of insurance, which Cohen assured Agami that Alko Systems maintained.

The parties agree that Cohen entered Venetian Investments' Marco Island premises and ascended to the roof to measure for the forthcoming installation of security cameras, the project to which Cohen and Agami had agreed, the project for which Cohen prepared the two written proposals, and the project for which Agami in acceptance of the proposal had issued a check.  Cohen fell to his death while on the roof to measure.  As the parties concede, the governing issue is whether the relation that results from this offer and acceptance was that of an "independent contractor."

Startlingly, no party addresses the law's method, both dispositive and readily ascertainable, of identifying an independent contractor and of distinguishing an independent contractor from an employee (or "servant," the formerly common term) or someone in another role.  *Cantor v. Cochran*, 184 So. 2d 173 (Fla. 1966), adopts the *Restatement (Second) of Agency* § 220 as the definitive method of determination.  In determining whether one acting for another is an independent contractor, Section 220 prescribes the following considerations:

> (a)  the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b)  whether or not the one employed is engaged in a distinct occupation or business;

(c)     the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d)     the skill required in the particular occupation;

(e)     whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f)     the length of time for which the person is employed;

(g)     the method of payment, whether by the time or by the job;

(h)     whether or not the work is a part of the regular business of the employer;

(i)     whether or not the parties believe they are creating the relation of master and servant; and

(j)     whether the principal is or is not in business.

See *Langfitt v. Fed. Marine Terminals, Inc.,* 647 F. 3d 1116, 1121 (11th Cir. 2011);

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F. 2d 1486, 1491 (11th Cir. 1990);

*Keith v. News & Sun Sentinel Co.*, 667 So. 2d 167 (Fla. 1995); *Metsker v. Carefree/Scott Fetzer Co.*, 2012 WL 2401790 (Fla. 2d DCA June 27, 2012); *Univ. Dental Health Ctr., Inc. v. Agency for Workforce Innovation*, 89 So. 3d 1139 (Fla. 4th DCA 2012).

When compared to the Section 220 factors, the record in this action yields an unmistakable result. Agami planned to exercise little, if any, control over the details of the work. Agami and Cohen discussed the number and location of the cameras and the price, but Agami deferred to Cohen on the particulars of the work. The proposal submitted for the work contemplates work independent of supervision from

Agami.  Cohen participated in the marketplace as an installer of security cameras and

not as a worker available for general duty, not even for general electrical work or

general work in the installation of equipment.  Specifically, Cohen appears in this

record as an installer of security cameras, and Cohen's work for Agami was as a

"professional" (Agami at 71) installer of security cameras.  The record is silent on

whether in the marketplace the installation of outdoor security cameras is typically

accomplished with close supervision from an "employer, " but the record confirms

that Agami had no plan for close supervision of Cohen's work ("Once I gave him a

check, he's going to go order the equipment, and he's going to come meet with me,

either in North Miami or in Marco, send me or bring me the proof of insurance, and

then he will take his helper and go install the equipment."  (Agami at 92)  The

installation of outdoor, rooftop, commercial, security cameras requires skill not

generally available to those in other occupations and other specialties and, most

tellingly for the purposes of this case, not available to Agami, the manager of a retail

shopping complex.  The choice of equipment, the capacity of the equipment, the

technique of installation at the chosen site, the material and tools necessary for

installation, and the like are, obviously, matters of specialized knowledge and

experience.  Cohen was to provide the "instrumentalities and tools" for the work.

Cohen was employed by Agami only for the specified job and for the necessary time,

and Cohen was paid for that job in a subdivided lump sum and not by the hour, by

the week or month, or by another unit of time.  Instead, Cohen was paid based only

upon the seasonable and satisfactory completion of the agreed work.  In other words,

Cohen was not paid hourly for his supervised labor in the manner of an employee but

was paid in a sequence of lump sums for the unsupervised but satisfactorily

completed installation of security cameras in the manner of an independent

contractor.  Neither Agami nor Venetian Investments nor any other defendant

participates (so far as the record reveals) in the business of installing security cameras.

Agami testified that in the Marco Walk project for Venetian Investments

Cohen (or Alko Systems) was an independent contractor.  Normally, the law

dismisses a characterization by a layperson as a mere opinion or conclusion offered

without the demonstrated expertise necessary to render a legally admissible opinion

or conclusion.  However, Section 220 includes as a pertinent consideration the

parties' understanding of their business relation.  The commentary to Section 220

explains that the normally irrelevant fact of the parties' belief is probative "insofar as

such belief indicates an assumption of control by one and submission to control by

the other."  In this instance, Agami's reference to the "professional" status of Cohen

and to his needing only proof of insurance before Cohen could "take his helper and

go install the equipment" leaves no doubt that Agami in fact deferred to Cohen in the

accomplishment of the agreed job.  The details of the two proposals, as well, attest to

this conclusion.  The second written proposal from Cohen to Agami, which Agami

accepted, includes a "work scope" and "equipment manifest" prepared entirely by

Cohen and states that "[t]he following is the price breakdown for installation of a

CCTV system at the Marco Island Walk shopping center you have requested." The proposal provides that the cameras "will be wired to sixteen channel[] DVRs for continu[uous] recording as per the original" proposal, which states that the cameras "will be connected to the internet for remote viewing." The proposal provides for "a full year parts and labor warranty" and a payment schedule determined by the percentage of completion of the project (50% – balance upon completion). Other than payment, the proposal requires Agami to provide only the internet service to which the cameras will attach, to provide electrical outlets and the furniture "for system installation," and to trim the trees in the parking lot so that the view of the cameras is suitably unobstructed.

This is most assuredly and manifestly a proposal formulated and extended by an independent contractor and, as well, a proposal received, understood, and accepted by Agami as a proposal from an independent contractor. The relation between Venetian Investments and Alko Systems was the relation of owner and independent contractor.

## PROOF OF INSURANCE AND ACCESS TO THE ROOF

Agami and Venetian Investments argue that because Cohen had not yet provided proof of insurance, he was forbidden by Agami to ascend the roof to accomplish his work. The record definitively negates this claim.

Case 2:10-cv-00607-UA-SPC   Document 122   Filed 08/10/12   Page 12 of 23 PageID 1669

Agami testified that Cohen never "asked me to go up on the roof and I never game him permission to go up on the roof," (Agami at 58) and Agami testified that Agami did not recall whether Cohen had been on the roof before the day that he fell to his death.  (Agami at 58)  But, Agami testified that two weeks before Cohen's accidental death Cohen was in Agami's Miami office and stated, "I'm going this afternoon to Marco," to which Agami said, "[D]on't go today, it's raining.  Leave it to some other day."  (Agami 64-65)  Agami testified that "he never asked me for permission to go on the roof" and that "he never asked, so I never refused."  (Agami 82-83)  Agami testified that there was nothing that Agami said that would prohibit Cohen from going to the roof "if he is going to do the work."  (Agami 83)  Speaking about the time after Cohen submitted the second proposal for only eight security cameras and after Agami issued the check, Agami testified:

> Q:   Okay.  So did that mean that he had the go-ahead to do the work?
>
> A:   Yes. And we discussed in my office, I say, do you have insurance, and I need you to provide me with the insurance, the proper insurance so we are covered.  And he told me he will get it for me.

(Agami 86)

> Q:   Was he still permitted to look around the premises to scope out the job?
>
> A:   When I gave him the check, we sign a contract.  This is to me a contract.  So, once I gave you a check, now, you know, before you start working, please provide me, like the rest of the company, proof of insurance.

- 12 -

Q:     Okay.  And this is – why do you need this?

A:     Anybody who work on my property have to provide me, as an independent contractor, to provide me with the coverage insurance.

(Agami 87)  Agami testified even more clearly and succinctly as his deposition progressed:

Q:     I think what you're telling me is that what you believed and what you wanted was that he should not go up on the roof without your permission.  You wanted that.

A:     Of course.

Q:     Okay.  But the second part of that is it was not discussed?

A:     We did not discuss.  Eventually, in order for put – for him to put camera on top of the building, he must climb to the roof.

Q:     Okay.  But the second part of my question is, you did not discuss it?

A:     No.

(Agami 95)  And finally:

Q:     But you didn't specifically tell him, do not go up to the property unless I – without my prior permission?

A:     No, I did not tell him that.

Q:     Okay.  Did you ever tell him that he wasn't allowed to go on any part of the property without you present?

A:     I did not say that.  Because it's a public property. . . .

. . . .

> Q:   Okay.  Did you ever tell him that he was not allowed to go
>      on, say, a portion of the property that the general public
>      was not allowed without you being present?
>
> A:   No, I did not.

(Agami 130-31)

Considered as a whole, Agami's testimony establishes that Agami subjectively preferred that Cohen not ascend the roof without Agami's permission and without Agami's presence, but Agami's testimony also establishes that Agami never objectively expressed to Cohen, and Cohen never objectively agreed to, that restriction.  Stated differently, the record confirms that the parties achieved a contract by offer (two proposals) and acceptance (an agreement and a check) and that the contract included no prohibition against Cohen's ascending the roof without Agami's presence and permission.  In fact, as Agami admits, Cohen on one occasion told Agami that Cohen was going straightaway to the job site and Agami told Cohen to go on another day because of rain predicted for that day.  Agami did not raise the absence of proof of insurance as a prohibition against Cohen's visiting the job site that day and ascending the roof; Agami raised no objection other than rain.  Cohen's contract contained no prohibition against his ascending the roof to measure without Agami's permission or presence.

Crediting Agami's testimony for the purpose of resolving this motion for summary judgment establishes that the parties agreed orally that Cohen would provide proof of insurance.  Of course, requiring an independent contractor to

provide proof of insurance is entirely in accord with the prevailing practice among
both prudent business people and homeowners when contracting for a major
residential project.  (Indeed, Agami's demand for proof of insurance evidences that
Agami understood himself to hire Cohen as an independent contractor.)  But the
record equally establishes that the proof of insurance was not required on or before
any stated time, at least any stated time earlier than the onset of the work.  Similarly,
the record contains no evidence that Agami notified Cohen (or even thought to
himself) that the proof of insurance was delinquent on or before the day of Cohen's
death or that Agami had even a doubt that Cohen's business (with which he dealt
elsewhere) would provide adequate and timely proof of insurance.  Agami admits
that Cohen told Agami that Cohen intended to visit the site and that Agami said
nothing in response about proof of insurance.

On the day of his death, Cohen had a valid contract with Venetian Investments
that required him to purchase and install security cameras.  Cohen had submitted and
Agami had accepted a written proposal.  Agami had issued a check to cover the
purchase of the cameras, and the project was ready to proceed.  No breach of the
contract had occurred.  In furtherance of the contract, Cohen ascended the roof, fell,
and died.  At that moment of his death, Cohen was indisputably on the roof under
contract with Agami and Venetian Investments; Cohen was undoubtedly an

independent contractor and, as such, an injury to him is excluded from coverage

under Catlin's general liability coverage.[2]

Agami and Venetian Investments assert also that, because the State of Florida

administratively dissolved Alko Systems in 1977, Cohen was not an independent

contractor in 2007, at the time of Cohen's death.  This arcane assertion by Agami

and Venetian Investments is unsupported by a citation to pertinent authority, either

statutory or decisional precedent.

In arguing the issue, the opposing parties invoke Section 607.1904, Florida

Statutes, as determinative.  The parties generally agree that the first main clause of

Section 607.1904 provides simply and directly that no person "acting as a

corporation shall be permitted to set up the lack of legal organization as a defense to

an action against the corporation."  In other words, if a defective corporation is sued,

the defective corporation cannot interpose the corporate defect in avoidance of

liability, precisely because, as the title of the statutory section suggests, the defective

corporation is estopped from asserting the defense; the defective corporation cannot

---

[2] Agami and Venetian Investments apparently argue that the proof of insurance was a "condition precedent" to the contract between Venetian Investments and Cohen.  Nothing supports this assertion.  First, the basis for this requirement is unilateral testimony by Agami, but the condition is not in writing and purports, as presented by Agami and Venetian Investments, to be only an oral condition precedent to a contract that arises from the acceptance of a written proposal.  However, the written proposal and the issuance of a check strongly negate the existence of an oral condition precedent.  Second, accepting Agami's testimony as true, the record establishes that the proof of insurance was required only before the onset of work and no one asserts any claim of breach of contract based on a failure to provide proof of insurance as of the day of Cohen's death.  The claim that proof of insurance was a condition precedent to the contract is without support, substance, or consequence.

deny the corporateness that was falsely advertised earlier.  So, had Venetian sued

Alko Systems for breach of the contract to install security cameras, the first main

clause of Section 607.1904 prevents Alko Systems from defending by denying Alko

Systems' corporate existence.  But Cohen's action in state court against Agami and

Venetian Investments is not an action against a dissolved corporation, and the first

main clause of Section 607.1904 is, the parties agree, inapplicable.

The second main clause of Section 607.1904 is the subject of the parties'

argument.[3]  The second main clause states:

> . . . nor shall any person sued on a contract made with the
> corporation or sued for an injury to its property or a wrong done
> to its interests be permitted to set up the lack of such legal
> organization in his or her defense.

In this instance, both Agami and Venetian Investments are a "person . . . sued

for . . . a wrong done to [the dissolved corporation's] interests," which is to say that

each is a "person" (Section 607.01401, Florida Statutes, defines "person" as both

---

[3] Notwithstanding reports to the contrary in some authorities, Florida's Section 607.1904 is not adapted from the Model Business Corporation Act, first promulgated by the American Bar Association in 1950, revised intermittently until the issuance of the Revised Model Business Corporation Act in 1984, and adopted in Florida in 1989.  1 *Fletcher's Cyclopedia of Corporations* § 222-25.  Section 607.1904 derives almost verbatim from Section 36 of Chapter 1639, Laws of Florida (1868).  The section originally stated:

> No body of persons acting as a corporation under this chapter shall be
> permitted to set the want of legal organization as a defence to an
> action against them as a corporation, nor shall any person sued on a
> contract made with the corporation, or sued for an injury to its
> property or a wrong done to its interests, be permitted to set up a
> want of such legal organization in his defense.

Florida has retained the section in only mildly altered form.

"individual and entity") sued for the wrongful death of the dissolved corporation's

principal (and principal productive asset), assuredly "a wrong done to [the

corporation's] interests" and a wrong that prevented the completion of the profitable

contract between Alko Systems and Venetian Investments.   But Agami and Venetian

Investments offer a distinctly different (and incorrect) reading of the second main

clause of Section 607.1904.   On page seven of the response (Doc. 99), Agami and

Venetian Investments argue that:

> In this case, VENETIAN INVESTMENTS, LLC and LEON
> AGAMI are challenging the validity of the agreement based
> upon the failure of Alko Systems, Inc. to be a Florida
> corporation.   They are being sued for the wrongful death of Mr.
> Cohen. . . . [N]either VENETIAN INVESTMENTS, LLC nor
> LEON AGAMI are being sued for a wrong done its interests.   As
> a result, F.S. 607.1904 does not apply . . .

Stated more directly, Agami and Venetian Investments apparently understand

the term "its" in the phrase "wrong done to its interests," a phrase located in the

second main clause of Section 607.1904, to mean the same "person" included in the

phrase "nor shall any person," a phrase located at the beginning of the second main

clause of Section 607.1904.   In other words, Agami and Venetian Investments read

the second main clause to say, for example, "nor shall [Agami] . . . sued for an injury

to [Agami's] interests . . . be permitted to set up the lack of such organization in his []

defense."   Agami and Venetian Investments claim that, because neither is sued for an

injury to the interests of either ("Fourth, neither VENETIAN INTERESTS, LLC nor

LEON AGAMI are being sued for a wrong done to its interests." Doc. 99 at 8), the

- 18 -

estoppel codified in Section 607 is inapplicable and, therefore, the Alko Systems'

dissolution is available as a defense to Agami and Venetian Investments (or, at least,

the defense is not statutorily prohibited).

The statutory interpretation offered by Agami and Venetian Investments

assumes a "person" sued for damage to the person's own interests.  Agami and

Venetian Investments (understandably) ignore the glaring absurdity of the notion that

a statute would contemplate a suit against a person for an injury to the person's own

interests (perhaps a person's suing himself for injuries to himself or, perhaps, a third

person's lodging an action against a person to recover for the person's injuries to

himself or from a fourth person).  The patent absurdity arising from the interpretation

offered by Agami and Venetian Investments signals that a different interpretation

prevails, and the canons of statutory construction permit the court to interpret a

statute to avoid patent absurdity.  *See* Antonin Scalia & Bryan A. Garner, *Reading*

*Law: The Interpretation of Legal Texts* (Thomson/West 2012) at 235-39 ["A provision

may be either disregarded or judicially corrected as an error (when the correction is

textually simple) if failing to do so would result in a disposition that no reasonable

person could approve."]; 2A *Sutherland Statutes and Statutory Construction* § 45.12 (7th

ed. 2007); *United States v. Ballinger*, 395 F.3d 1218, 1237 (11th Cir. 2005) (Citing *In re*

*Chapman,* 166 U.S. 661, 667 (1897)); *Shell Harbor Group, Inc. v. Dep't of Bus. Regulation,*

*Div. of Alcoholic Beverages & Tobacco*, 487 So. 2d 1141, 1142 (Fla. 1st DCA 1986).

The proper antecedent of the pronoun "its" in the phrase "wrong done to its interests" and the proper antecedent of the pronouns in the phrase "his or her" in the phrase "in his or her defense" establish the meaning of the second main clause of Section 607.1904:

> . . . nor shall any person sued on a contract made with the corporation or sued for an injury to *its* property or a wrong done to *its* interests be permitted to set up the lack of such legal organization in *his or her* defense.

(Emphasis added)  A pronoun, whether anaphoric or cataphoric, normally refers to the nearest reasonable antecedent.  The pertinent canon of statutory construction, "the canon of the last antecedent," provides that "a pronoun, relative pronoun, or demonstrative adjective generally refers to the nearest reasonable antecedent." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (Thomson/West 2012) at 144-46; 2A *Sutherland Statutes and Statutory Construction* § 47.33 (7th ed.2007); *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1007 (Fla. 2010).

In Section 607.1904, "corporation" is the nearest antecedent and the only antecedent of "its" that yields an interpretation that is not absurd.  Altered to substitute the nearest antecedent for "its," Section 607.1904 reads:

> . . . nor shall any person sued on a contract made with the corporation or sued for an injury to [*the corporation's*] property or a wrong done to [*the corporation's*] interests be permitted to set up the lack of such legal organization in his or her defense.

This is the only reasonable interpretation.

Although the phrase "his or her" also employs pronouns to which the nearest antecedent in Section 607.1904 is "corporation," if "his or her" refers to "corporation," another absurdity results, specifically, the statute (incomprehensibly) prohibits a "person" sued for a wrong to the corporation's interest from raising the corporation's dissolution in the corporation's defense.  This is utter nonsense because the plaintiff cannot raise a defense for the defendant (nor can one imagine why a plaintiff would, if possible, raise a defense for the defendant).  The proper antecedent of the pronouns in the phrase "his or her" is "person," which is the more linguistically comfortable, more proximate, and more satisfying antecedent for "his or her" than "corporation" (although Chapter 607 defines "person" as "individual and entity").  This is the only reasonable interpretation.

In sum, the second main clause of Section 607.1904, properly interpreted, reads:

> . . . nor shall any person sued on a contract made with the corporation or sued for an injury to [*the corporation's*] property or a wrong done to [*the corporation's*] interests be permitted to set up the lack of such legal organization in [*the person's*] defense.

Stated with explicit application to the state court, wrongful death action by the deceased's estate against Agami and Venetian Investments, which results in this declaratory judgment action by Catlin, the statute reads:

> . . . nor shall [Agami and Venetian Investments] . . . sued for . . . a wrong done to [Alko Systems'] interests be permitted to set up the lack of [Alko Systems'] legal organization in [Agami and Venetian Investments'] defense.

- 21 -

This construction of the statute coexists comfortably with the rules of the English language, with the rules of statutory construction, and with common sense principles of corporation law, including the many provisions in Chapter 607 that govern dissolution. Also, this construction of the statute is in congruity with the statutory intent to "preclude[] a party from using the lack of formal incorporation as an excuse for breach of contract with or injuries to the presumed corporation." Stuart R. Cohn & Stuart D. Ames, *Florida Business Laws Annotated* (Thomson/ Reuters 2011) at 234. Agami and Venetian Investments are estopped to raise Alko Systems dissolution as a defense in the action for wrongful death.[4]

However, even assuming that Agami and Venetian Investments are permitted to raise defensively the dissolution of Alko Systems, the result (independent contractor) is unchanged because, in whatever form of business entity – corporation, sole proprietorship, or the like – Alko Systems or Cohen contracted with Venetian Investments, the relation is that of owner and independent contractor. *Forbes v. Lewis*

---

[4] Although the parties stipulate the applicability of Section 607.1904 to a corporation administratively dissolved by Florida's Secretary of State, authority to that effect is scarce. *But see United States v. Penny*, 2003 WL 21224778 *4 (S. D. Fla. ) (Moreno, J.). Applicability assumes that the statutory term "lack of legal organization" in Section 607.1904 includes administrative dissolution by the Secretary of State after incorporation, as well as the entire failure to achieve incorporation in the first instance. Applicability is more problematic in consideration of Section 607.1421(4), situated under the title "Procedure for and effect of administrative dissolution" and stating, in pertinent part, "A[n] . . . agent of a corporation dissolved pursuant to this section, purporting to act on behalf of the corporation, is personally liable for the . . . liabilities of the corporation arising from such action and incurred subsequent to the corporation's administrative dissolution . . ." The result in this action appears unaffected by the choice between Section 607.1904 and Section 607.1421(4), because, however the corporation is characterized as of the death of David Cohen, the governing relation with Venetian Investments is that of an independent contractor and coverage is excluded.

*Bear Co., Inc.*, 524 So.2d 1098, 1099 (Fla. 1st DCA 1988); Thomas G. Fisher, Annotation, *Liability of shareholders, officers, and directors where corporate business is continued after dissolution*, 72 A.L.R. 4th 419.  Not a speck of authority appears to the contrary.  As an independent contractor, whether individually or in any form of business entity, whether as a sole proprietorship or a corporation, Cohen and Alko Systems on the Marco Walk job were excluded as an independent contractor from coverage under Catlin's general liability policy issued to Venetian Investments.

### CONCLUSION

The record demonstrates the absence of a genuine issue of material fact, and Catlin's motion for summary judgment (Doc. 95) is **GRANTED**.  Because the death of David Cohen, who fell to his death from the roof of the Marco Walk shopping center while an independent contractor, is excluded from coverage under the general liability policy issued by Catlin to Venetian Investments, Catlin has a duty neither to defend as a result of the complaint in *Estate of David Cohen v. Venetian Investments, LLC, et al.*, Case No. 10-43618 CA 22, in the Circuit Court for Miami Dade County, Florida, nor to indemnify as a result of the events that the complaint alleges.  The Clerk shall enter judgment for the plaintiff and against the defendants and close the case.

ORDERED in Tampa, Florida, on August 10, 2012.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE